IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Larry Parker,<br><br>                Plaintiff,<br>vs.<br><br>Nancy A. Berryhill,<br>Acting Commissioner of Social Security Administration,<br>                Defendant. | Civil Action No. 2:17-cv-1213-CMC<br><br>**OPINION AND ORDER** |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(b)(2)(a) and 83.VII.02, *et seq.*, D.S.C.

The Report, filed July 16, 2018, recommends the decision of the Commissioner be affirmed. ECF No. 15. On July 30, 2018, Plaintiff filed objections to the Report. ECF No. 16. On August 6, 2018, the Commissioner filed a response to Plaintiff's objections. ECF No. 18. For the reasons stated below, the court declines to adopt the Report and reverses and remands the decision of the Commissioner for further administrative action, pursuant to sentence four of § 405(g).

**<u>Standard</u>**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[1] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review

---

[1] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).

2

contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## **Background**

Plaintiff applied for DIB on July 24, 2009, alleging disability as of June 15, 2009, due to back and knee pain. R[2]. at 73-78. After a hearing, the Administrative Law Judge ("ALJ") found Plaintiff was not disabled. R. at 73-93. The Appeals Council denied review. R. at 94. Plaintiff thereafter filed a second set of applications for DIB and SSI on May 14, 2013, claiming disability as of July 24, 2009 due to back and knee pain.[3] R. at 205-217. Plaintiff's applications were denied initially and upon reconsideration. On February 5, 2016, a second hearing was held before an ALJ. R. at 38-65. On March 30, 2016, the ALJ issued a decision, finding Plaintiff was not disabled within the meaning of the Act. R. at 13-35. Plaintiff requested review by the Appeals Council,

---

[2] Citations to the Record are denoted by "R."

[3] The court notes Plaintiff was incarcerated from October 13, 2013 to April 2014 (R. at 486-88), and benefits are generally not payable for any period during which a claimant is incarcerated for the commission of a crime. *See* 42 U.S.C. § 402(x)(1)(a).

3

which was denied (R. at 1), making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action May 10, 2017. ECF No. 1.

## The ALJ's Decision

*1) Disability Hearings*

After Plaintiff's first hearing, ALJ Spidel considered Plaintiff's submitted documents and medical records as well as hearing testimony, and determined Plaintiff was capable of performing sedentary work. R. at 81. Plaintiff then filed his second set of applications, and after denials, requested another hearing. The ALJ at that hearing, Judge Wilson, determined Plaintiff had improved since the first hearing and was capable of performing light work with limitations on using ropes, ladders, or scaffolds and occasionally stooping, kneeling, crouching and crawling. R. at 22. ALJ Wilson accorded "partial weight" to the prior decision of ALJ Spidel, "because there was new evidence that could not be considered at the time of the prior decision."[4] R. at 27.

At the hearing before ALJ Wilson, the Vocational Expert ("VE") considered hypothetical situations and opined whether a claimant with limitations in the stated hypotheticals would be able to sustain competitive employment. The ALJ first asked the VE to consider a hypothetical individual with the same characteristics as Plaintiff who could lift 20 pounds occasionally, 10 pounds frequently; stand six of eight hours, walk six of eight hours, and sit six of eight hours; push

---

[4] The court notes ALJ Wilson stated that ALJ Spidel determined Plaintiff's RFC was for "light exertion limited to simple repetitive tasks." R. at 27. However, ALJ Spidel appears to have determined Plaintiff was capable of "the full range of sedentary work" and could perform "simple, routine, repetitive tasks." R. at 81.

and pull in lower extremities occasionally; climb, kneel, crouch and crawl occasionally; never use ropes, ladders and scaffolds; and avoid concentrated exposure to hazards. R. at 61. The VE opined that individual could not perform Plaintiff's past work, but could perform other jobs in the "light" work category, for example as a cashier, storage facility rental clerk, or paint spray investigator. R. at 62. The ALJ then asked the VE to consider the same individual with the same functional limitations except he would have daily absences from his work station with a duration in the discretion of the individual (to rest or shift positions), as needed. The VE stated that "would effectively eliminate any form of competitive employment." R. at 63. Plaintiff's attorney then asked the VE whether rest away from the work station for significantly more than an hour during the working portion of the work day would disqualify him from competitive employment, and the VE agreed that would be "inconsistent with competitive employment." R. at 63-64. Next, Plaintiff's attorney asked the VE if the same individual who would also miss more than three days of work per month would be able to sustain competitive employment, and the VE agreed he would not. R. at 64. Finally, the VE agreed the same individual who would have problems with attention and concentration sufficient to frequently interrupt tasks during the work day would not be able to be competitively employed. R. at 64-65.[5]

---

[5] The limitations in these last three hypotheticals directly track the language of the treating physicians' opinion questionnaires, detailed below.

### 2) *Non-Examining Physicians' Opinions*

Two state agency non-examining physicians submitted opinion evidence as part of the Disability Determinations: Dr. Van Slooten and Dr. Junker.[6] Dr. Van Slooten submitted an opinion as part of the Disability Determination Explanation dated September 20, 2013. R. at 99-111. As part of that determination, Dr. Van Slooten assessed Plaintiff's submitted evidence, credibility, and RFC and opined Plaintiff was not disabled. *Id.* He specifically noted, in evaluating credibility, "[t]here is no indication that there is medical or other opinion evidence." R. at 105. In the Reconsideration level Disability Determination Explanation, Dr. Junker evaluated Plaintiff's physical condition and potential limitations on December 13, 2013. R. at 125-136. Dr. Junker also opined Plaintiff was not disabled, and again specifically stated there was "no indication that there is medical or other opinion evidence." R. at 131. The ALJ accorded "great" weight to the opinions of Drs. Van Slooten and Junker. R. at 26.

The non-examining physicians did not have the opinions of the treating physicians, detailed below, when making their determinations regarding disability. The non-examining physicians did, however, have the medical records Plaintiff submitted in support of his application for disability benefits, as the ALJ noted. R. at 26. The ALJ determined the "[e]vidence submitted subsequent

---

[6] Drs. Horn and Wieland were also involved in the Disability Determinations, but appear to address only Plaintiff's "affective disorder" and not his back, knee, or hip pain. Plaintiff does not allege error in the findings regarding his depression.

to the [non-examining physicians'] opinion being rendered failed to reveal any significant changes necessitating modification's [*sic*] of the opinion." *Id.*

### 3) Treating Physicians' Opinions

Plaintiff submitted opinions of four of his treating physicians regarding his medical condition. R. at 489, 490, 520, 598. Two of these opinions, those of Drs. Hedden and Baird, concerned Plaintiff's condition in 2014, a third (Dr. Shallcross) in January 2015, and the last (Dr. Lenehan) in February 2015. *Id.* Drs. Hedden and Baird opined Plaintiff was unable to engage in anything more than sedentary work, and Dr. Lenehan agreed "it is unlikely that he could engage in anything more than sedentary work." R. at 489, 490, 598 Further, Dr. Hedden noted Plaintiff would most probably have to rest away from the work station for significantly more than an hour out of the working portion of the day, would most probably have to miss more than three days of work in a month, and would have problems with attention and concentration sufficient to frequently interrupt tasks during the work day. R. at 489. Dr. Baird opined Plaintiff would have to rest away from his work station for significantly more than an hour per work day, would "likely" miss more than three days of work per month, and it was "unknown" whether he would have problems with attention and concentration. R. at 490. Dr. Lenehan stated it was "likely" Plaintiff would have to rest away from his work station for more than an hour per work day and miss more than three days of work per month, but it was unlikely he would have problems with attention and concentration as "lumbar DDD does not cause problems with attention and concentration." R. at 598. The final opinion, by Dr. Shallcross, did not contain the question regarding sedentary work

7

and merely opined Plaintiff would likely have to sit every hour or so and would most probably have to miss more than three days of work per month. R. at 520.

The ALJ specifically considered each of the form questionnaires submitted by these treating physicians on Plaintiff's behalf. R. at 25-26. The ALJ noted in his opinion Drs. Hedden and Baird "opined the claimant is unable to perform sedentary work." R. at 25. However, their questionnaires actually reveal these physicians agreed Plaintiff could not "engage in anything *more* than sedentary work." R. at 489, 490 (emphasis added). Dr. Lenehan similarly noted it was "unlikely that he could engage in anything more than sedentary work." R. at 598. The ALJ found these opinions inconsistent with the medical records and Plaintiff's activities of daily living, and thus accorded "little weight" to the opinions. R. at 25-26.

### 4) ALJ's RFC Determination

The ALJ ultimately determined Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift twenty pounds occasionally and ten pounds frequently. The claimant is able to walk, stand, and sit for six hours in an eight-hour day. Furthermore, the claimant is able to occasionally push and pull with his lower extremities, but is unable to use ropes, ladders, or scaffolds. Additionally, the claimant is able to occasionally climb, stoop, kneel, crouch, and crawl, but should avoid concentrated exposure to hazards.

R. at 22. The ALJ noted he considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. *Id.*

**Discussion**

The Magistrate Judge recommends the court affirm the Commissioner's decision. Plaintiff objects to the Report, arguing: (1) the ALJ failed to provide adequate explanation for his credibility determination and (2) the ALJ erred in failing to properly evaluate the opinion evidence. ECF No. 16. The Commissioner argues Plaintiff's objections essentially rehash arguments made in his brief before the Magistrate Judge and should be treated as general objections, not specific ones.[7] ECF No. 18.

    *1) Credibility Determination*

Plaintiff first argues the ALJ did not "build an accurate and logical bridge from the evidence" to his conclusion regarding Plaintiff's credibility when he found Plaintiff only partially credible. ECF No. 24 at 1. He contends the ALJ failed to consider that the series of questions regarding activities "contained no quantification . . . were generalizations of the past four year[s]" and did not establish if Plaintiff had difficulty or assistance performing the activities. Plaintiff contends the ALJ did not consider the record evidence as a whole, and the Magistrate Judge may not provide "post hoc rationale" to support the ALJ's findings. Therefore, Plaintiff argues, substantial evidence does not support the ALJ's credibility determination and the case should be remanded for further administrative action. *Id.* at 6.

---

[7] Despite this argument, the court has reviewed the issues raised in Plaintiff's objections *de novo*.

9

As remand is required due to the other grounds argued by Plaintiff, the court declines to address this issue. On remand, the ALJ is to take into consideration Plaintiff's allegations of error regarding the credibility determination in light of the findings below.

### 2) *Evaluation of Opinion Evidence*

Plaintiff next argues the ALJ erred in discounting the questionnaires submitted by Plaintiff's treating physicians Drs. Baird, Hedden, Shallcross, and Lenehan. ECF No. 16 at 6. He contends the ALJ did not adequately consider the consistency of these providers' opinions. Finally, he argues the ALJ should not have accorded significant weight to the opinions of non-treating examiners whose opinions were based on a significantly incomplete or partial medical record. *Id.* at 10.

#### a. Treating Physicians

The opinions submitted by the treating physicians are fairly consistent with each other, as Plaintiff argues, and may have been mistakenly characterized by the ALJ as precluding sedentary work.[8] However, it is possible the ALJ considered the totality of each questionnaire, along with other record evidence, in determining the treating physicians opined Plaintiff could not perform

---

[8] The ALJ went to great lengths to discount opinions of the treating physicians that Plaintiff "is unable to perform sedentary work." R. at 25. As noted above, the treating physicians agreed Plaintiff could not perform more than sedentary work, not that he was unable to perform sedentary work. They did indicate Plaintiff would likely require rest for more than one hour per day and likely miss more than three days a month. Nevertheless, the ALJ concluded that in contrast to Dr. Hedden's opinion based on an abnormal MRI "none of these impairments would prevent the claimant from performing basic work activities." *Id.*

sedentary work. The ALJ could have considered the opinions regarding resting an hour away from his work station and missing more than three days of work per month, coupled with the testimony from the VE regarding inconsistency with these limitations and competitive employment, as opining Plaintiff was unable to perform sedentary work. As the issue below requires remand, the ALJ should reevaluate and more thoroughly explain his findings regarding the treating physicians' opinions.

### b. Non-examining Physicians

Plaintiff also argues the ALJ should not have accorded great weight to the opinions of the non-examining physicians when their opinions contradict the treating physicians' opinions. Plaintiff contends the ALJ improperly gave greater weight to the opinions of the non-examining physicians than those of the treating physicians, despite the fact the opinions of the non-examining physicians were made "without the benefit of any of the treating opinions." ECF No. 16 at 9. Citing *Rogers v. Colvin*, No. 0:12-cv-2210-MGL, 2014 WL 1330088 (D.S.C. March 31, 2014), Plaintiff argues "the consistent opinions from treating providers and specialists would have made a difference to an impartial physician based on a review of the evidence." *Id.* The Magistrate Judge did not address this argument in the Report.

Opinions by non-examining physicians "are typically afforded less weight than those by examining and treating physicians." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Because the non-examining physicians did not have the benefit of the treating physicians' opinions, and specifically noted there was no indication there was "other opinion evidence," remand is necessary. The court is unable to determine whether the ALJ's decision to accord great weight to the non-

11

examining physicians' opinions was supported by substantial evidence. This is especially so where the VE testified that discretionary rest during the workday would "effectively eliminate any form of competitive employment" (R. at 63), all four of Plaintiff's treating physicians indicated Plaintiff would likely require rest away from the work station for an hour or more per day, and the non-examining physicians did not have the benefit of the treating physicians' opinions.

## Conclusion

For the reasons set forth above, the court declines to adopt the Report and reverses and remands the decision of the Commissioner for further administrative action, pursuant to sentence four of § 405(g).[9]

**IT IS SO ORDERED**.

s/Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
August 14, 2018

---

[9] The clerk of the Court will enter a separate judgment pursuant to the Federal Rules of Civil Procedure, Rule 58.